# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 14-CV-5294 (JFB)

LISA NOUTSIS,

Plaintiff,

VERSUS

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**MEMORANDUM AND ORDER**
February 10, 2016

JOSEPH F. BIANCO, District Judge:

Plaintiff Lisa Noutsis ("Noutsis" or "plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("SSA"), challenging the final decision of the defendant, the Acting Commissioner of Social Security ("defendant" or "Commissioner"), denying plaintiff's application for disability insurance benefits ("DIB") beginning on March 1, 2011. An Administrative Law Judge ("ALJ") found that plaintiff had the capacity to perform the full range of light work required by her past relevant job as a waitress, and was therefore not disabled. The Appeals Council denied Noutsis' request for review on July 16, 2014.

The Commissioner moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings or, in the alternative, remand. She argues that (1) the ALJ erred by failing to accord the proper weight to the opinion of plaintiff's treating physician, (2) the ALJ erred by failing to properly evaluate plaintiff's credibility, and (3) the Appeals Council erred by failing to consider new and allegedly material evidence.

For the reasons set forth herein, the Court denies the Commissioner's motion for judgment on the pleadings, denies plaintiff's cross-motion for judgment on the pleadings, and grants plaintiff's motion to remand. Accordingly, the case is remanded to the ALJ for further proceedings consistent with this Memorandum and Order. Remand is warranted because the ALJ did not evaluate Dr. Essman's opinion according to the various factors that must be considered in determining how much weight to give a treating physician's opinion. Although the ALJ cited other medical evidence in support of its position, it did not apply all of the required factors or specifically explain how

the other evidence undermined the treating physician's opinion regarding plaintiff's inability to work. Accordingly, remand is warranted.[1]

I. BACKGROUND

A. Factual Background

The following summary of the relevant facts is based upon the Administrative Record ("AR") as developed by the ALJ. A more exhaustive recitation of the facts is contained in the parties' submissions to the Court and is not repeated herein.

1. Personal and Work History

Plaintiff was born in 1960 (AR at 158), and has a high school education. (*Id*. at 59.) She worked as a waitress and server in a deli for approximately eleven years, from 2000 until March 2011. (*Id*. at 187.) As a server, her duties included taking orders over the phone and in person, serving customers, and preparing platters. (*Id*. at 59-60.)

2. Medical History

a. History Before Alleged Onset Date

Plaintiff visited Dr. Louis Tiger for a rheumatology consultation on October 21, 2005. (*Id*. at 250-51.) Dr. Tiger noted that plaintiff began experiencing joint pain at age twenty-one, conducted a physical examination, and assessed possible osteoarthritis and fibromyalgia. (*Id*. at 250-51.) Dr. Tiger's physical examination of plaintiff's extremities and joints revealed mild crepitation on motion of the knees, tenderness at the right radial head, and trigger areas on her arms, back, and legs.

(*Id*. at 251.) X-rays of plaintiff's right elbow showed calcification in the soft tissue, which Dr. Tiger concluded represented potential calcific bursitis. (*Id*. at 272.) X-rays of plaintiff's lumbosacral spine showed scoliosis convexed to the left, with degenerative changes and narrowing on several vertebrae. *Id*. X-rays of plaintiff's knees showed early osteoarthritic changes with tibial spine prominence and some mild patellofemoral narrowing. *Id*. X-rays of her hands and wrists were essentially within normal limits. *Id*.

On January 7, 2010, plaintiff saw Dr. Tiger and received X-rays and laboratory tests. (*Id*. at 258-60.) The X-rays showed hypertrophic osteoarthritic changes at several distal interphalangeal (DIP) joints in her hands and early osteoarthritic changes with some tibial spine prominence and patellofemoral narrowing in her knees. (*Id*. at 258.) On January 12, 2010, laboratory tests revealed a positive rheumatoid factor of 33. (*Id*. at 260.)

On August 13, 2010, plaintiff visited Dr. Tiger again and received additional X-rays. (*Id*. at 255.) The X-ray of her lumbar spine revealed scoliosis with convexity to the left, degenerative changes in multiple levels, and patent sacroiliac joints. *Id*.

On November 29, 2010, plaintiff was evaluated by neurologist Dr. Shicong Ye. (*Id*. at 275-76.) She complained of right knee and foot problems, left foot pain, movement at the back of her head, a lightening sensation of her left visual field, numbness at the corners of her mouth, difficulty concentrating, and trouble speaking. (*Id*. at 275.) A neurological examination showed cranial nerves II through XII to be intact. *Id*. Plaintiff's face was symmetric and she had full eye movement in all directions. *Id*. Her pupils were equal and

---

[1] As discussed, *infra*, on remand, in addition to evaluating Dr. Essman's opinion according to the treating physician rule, the ALJ should also consider the new evidence from Dr. Stein and re-assess the credibility of plaintiff's testimony.

2

reactive to light, her tongue was midline, and she had a positive gag. *Id*. There was full muscle strength in all extremities, deep tendon reflexes were symmetric, her finger-to-nose coordination was normal, her Bilateral Babinski test was negative, deep and superficial sensations were normal, and gait and station were normal. *Id.* Dr. Ye recommended magnetic resonance imaging ("MRI") of the brain without contrast. *Id.*

On January 31, 2011, plaintiff returned to Dr. Ye for a follow-up appointment. Dr. Ye evaluated the MRI, and found that the MRI revealed a small 5mm focal lesion on the left side of the brain anterior to the left lentiform nuclei and possible 1mm to 2mm right and left focus superior frontal lesions. (*Id*. at 274.) Dr. Ye rendered no treatment at the time and suggested another MRI in six months to ensure the lesion did not progress or change. *Id*.

b.  History After Alleged Onset Date

On March 3, 2011, plaintiff was seen in the emergency room at St. Joseph's Hospital for right ankle pain after a fall. (*Id*. at 320; *see* Tr. 319-330.) Plaintiff was given a splint and crutches, prescribed Motrin, and discharged that same day. (*Id*. at 321-22.)

On April 14, 2011, she was diagnosed with a right ankle fracture by her physician, Dr. Louis Essman, an internist who had been treating her since July 2010 for rheumatoid arthritis and fibromyalgia. (*Id*. at 313, 316.) Following the ankle fracture, plaintiff continued to see Dr. Essman for right ankle pain, left knee pain, carpal tunnel syndrome, and fibromyalgia through June 16, 2011. (*Id*. at 62, 316.)

On September 8, 2011, Dr. Ammaji Manyam, also an internist, performed a consultative exam of the plaintiff at the request of the Social Security Administration. (*Id*. at 287-93.) Plaintiff complained of back, knee, hand, shoulder, and right arm pain. (*Id*. at 287.) Plaintiff reported that she had arthritis for the last five years and had been diagnosed with fibromyalgia because of burning pain in her right shoulder and left neck, and that she had difficulty standing for long periods of time, walking long distances, bending over, and climbing stairs. (*Id*. at 287.) Dr. Manyam noted that plaintiff reported the pain was relieved by medication. *Id*. It was documented that plaintiff had no hospital admissions, surgeries, or significant mental illnesses, and her current medications were Amitripyline, Naproxen, and Oxycodone. (*Id.* at 288.)

Dr. Manyam reported plaintiff's daily activities included cooking two or three times a week, laundering twice a week, showering and dressing herself every day, watching television, listening to the radio, socializing with friends and walking, but not far. *Id.* Dr. Manyam noted plaintiff was well-nourished, not in acute distress, had a normal gait, could walk on heels and toes normally and fully squat, had a normal stance, needed no assistance to walk, change for an exam, or to rise from chair. *Id.* Plaintiff's skin, lymph nodes, head, face, eyes, ears, nose, throat, chest, lungs, heart, and abdomen were all normal. (*Id*. at 288-89.) Dr. Manyam found no scoliosis, kyphosis, or abnormally thoratic spine. (*Id*. at 289.) Plaintiff had decreased motion in her right shoulder and full range of motion in all other areas tested. *Id*. Her neurologic extremities and fine motor activity were normal as well. (*Id.* at 289-90.) X-rays of plaintiff's lumbosacral spine showed degenerative changes and scoliosis, and X-rays of plaintiff's knees showed no significant bony abnormality. (*Id*. at 290.) Dr. Manyam diagnosed plaintiff with multiple joint pain with no positive signs from examination and a history of fibromyalgia with no trigger points. *Id*. Dr. Manyam concluded that plaintiff's prognosis was good and that plaintiff had no physical limitations. *Id*.

3

On September 22, 2011, Dr. Essman completed a report at the request of the Social Security Administration, indicating he had been treating plaintiff since July 2, 2010, and had seen her most recently on September 7, 2011. (*Id.* at 281.) He diagnosed plaintiff with rheumatoid arthritis, back pain, knee pain, headaches, vertigo, fibromyalgia, and carpal tunnel syndrome, indicated her primary symptoms were pain and dizziness, and her treatment included the medications Oxycodone, Amitriptyline, and Naprosyn. (*Id.* at 281-282.) He noted plaintiff needed no assistive device to walk, but had some decreased mobility. (*Id.* at 283.) Plaintiff could frequently lift up to ten pounds, could stand and/or walk less than two hours a day, and could sit less than six hours a day. *Id.* Dr. Essman wrote that plaintiff had fractured her right ankle and had a positive rheumatoid factor. (*Id*. at 284.) Dr. Essman recorded decreased mobility in plaintiff's elbow flexion-extension, elbow supination, elbow pronation, knee fexion-extension, hip forward flexion, hip rotation-interior, hip rotation exterior, spine cervical region extension, spine lumbar region flexion-extension, and ankle plantar-flexion. (*Id*. at 285-86.)

On October 17, 2011, Dr. Essman completed a second Multiple Impairment Questionnaire. (*Id.* at 295-302.) Dr. Essman noted he saw the plaintiff approximately every six weeks from July 2, 2010 to August 25, 2011. (*Id*. at 295.) He diagnosed a fractured ankle, back pain, carpal tunnel syndrome, rheumatoid arthritis, fibromyalgia, and knee pain, with primary symptoms of knee pain, back pain, foot pain, numbness, headaches, occasional speech problems, and visual disturbance. (*Id*. at 296.) The basis for his diagnoses were a positive rheumatoid factor, a thyroid ultrasound, and an MRI of the brain. *Id.* Dr. Essman rated plaintiff's pain as moderately severe (a 7 out of 10) and her fatigue as moderate (a 5 out of 10). (*Id*. at 297.) He also noted that plaintiff's pain was not completely relieved with medication. *Id*.

Dr. Essman documented the plaintiff's significant limitations in reaching, grasping, turning, and twisting due to rheumatoid arthritis in her hands, as well as the fact that plaintiff could sit for only two hours at a time and could stand or walk for less than one hour in an eight-hour work day. (*Id*. at 298-99.) He reported that plaintiff's symptoms were frequently severe enough to interfere with attention and concentration. (*Id*. at 300.) He listed her medications as Oxycodone, Naproxen, and Elavil, and recommended physical therapy. (*Id*. at 299.) Dr. Essman concluded that plaintiff could not work full time in a competitive job requiring sustained activity, that her impairments would last at least twelve months, that she was not a malingerer, and that she was capable of tolerating moderate work stress. (*Id*. at 300.) Finally, he wrote that the plaintiff would need to take unscheduled breaks from work, would likely miss work more than three times a month, and could not push, pull, kneel, bend or stoop. (*Id*. at 301.)

On October 31, 2011, Dr. Thien Huynh conducted a consultative examination. (*Id*. at 304-06.) Plaintiff complained of narrow angles, and reported seeing black dots in her left eye and having difficulty driving at night due to increased glare, though she did not report experiencing eye pain or irritation. (*Id*. at 304.) Plaintiff was status post laser peripheral iridotomies in both eyes, and her angles remained narrow despite the laser procedures. *Id.* Based on his examination, Dr. Huynh concluded that there was no evidence of acute or chronic angle closure and plaintiff was not visually disabled, though she did require regular monitoring. *Id.*

On October 4, 2012, Dr. Essman submitted an additional questionnaire with similar clinical findings and diagnoses as contained in the October 17, 2011 questionnaire. (*Id*. at 337-344.)

On September 12, 2013, following the decision of the ALJ against plaintiff, plaintiff was evaluated by Dr. Bruce Stein, a board certified rheumatologist. (*Id*. at 29.) Dr. Stein completed a Multiple Impairment Questionnaire and submitted a letter on September 20, 2013. (*Id.* at 19-26, 29.) He stated that he had seen plaintiff on September 12, 2013 for joint and lower back pain, stiffness, and fatigue. *Id.* Dr. Stein diagnosed plaintiff with fibromyalgia, rheumatoid arthritis, carpal tunnel syndrome, and status post displaced ankle fracture. He found that her prognosis was fair, and that she was unable to work indefinitely. *Id*. His clinical findings included tender points in plaintiff's cervical spine bilaterally, epicondyles, lumbosacral spine, and bilateral throchanteric bursa. *Id*. Plaintiff's primary symptoms were a history of generalized pain in her upper and lower extremities. (*Id*. at 20.) Dr. Stein noted plaintiff's level of pain and fatigue were rated as moderately severe (an 8 out of 10) and that the pain was relieved with medication. (*Id*. at 21.) Dr. Stein agreed with Dr. Essman that plaintiff was not a malingerer, and experienced good and bad days. (*Id.* at 24-25.) According to Dr. Stein, plaintiff could sit and stand or walk only two hours in an eight-hour day, and she could not sit continuously. *Id*. Plaintiff could only occasionally lift or carry five pounds or less. (*Id.* at 22.) Plaintiff also had limitations in repetitive reaching, handling, fingering, lifting, grasping, turning, and twisting objects. *Id*. Dr. Stein documented that the plaintiff's symptoms would increase in a competitive work environment and interfere with her ability to work. (*Id*. at 23-25.) Plaintiff would also need to avoid certain activities if she did work, including pushing, pulling, and bending. (*Id*. at 25.) Dr. Stein indicated that plaintiff's pain, fatigue, and other symptoms would constantly interfere with her attention and concentration. (*Id.* at 24.) He stated that the symptoms and limitations detailed in the questionnaire were present since July 2, 2010. (*Id*. at 25.)

### 3. Plaintiff's Testimony at the Administrative Hearing

Plaintiff testified before the ALJ on October 12, 2012. (*Id*. at 56-75.) She testified that she stopped working when she fell and broke her ankle in March 2011, but that she had been struggling with pain and ongoing medical problems before the fall. (*Id*. at 62.) Plaintiff reported that she was in constant pain and that her condition had worsened over time. (*Id*. at 66-67.) She said she had difficulty leaning over and getting up from low chairs, and that she tired quickly when walking and could only stand for about thirty-five to forty minutes at a time. (*Id.* at 66-68.) She said she watches television during the day and lies down for about an hour and a half to two hours every day. (*Id.* at 69-70.) Plaintiff said she could drive and run some errands close to home alone, but could not go grocery shopping without the assistance of family members. (*Id.* at 70-71.) She testified that she could no longer cook meals or clean the house, which she used to do before she got sick. (*Id.* at 71-72.) Plaintiff further testified that she took Amitriptyline for approximately fifteen years for fibromyalgia. (*Id.* at 72-73.)

Plaintiff testified that she did not work for a period of time while she was taking care of her children in the 1990s, but returned to work in 2000. (*Id*. at 73.) When asked about her medical insurance while she was working, plaintiff said she had a very high deductible plan making it too expensive for her to see more than one doctor. (*Id*. at 63-64.) Plaintiff testified that she had been seeing Dr. Essman

for about three years for her knee, arm, and wrist pain, and rheumatoid arthritis. (*Id*. at 64-65.) She said that since March 2011, she had to decrease the frequency of her visits to Dr. Essman because she no longer had medical insurance of any kind. (*Id*. at 64.)

## B. Procedural History

Plaintiff applied for DIB on July 28, 2011, alleging disability since March 1, 2011 due to back and knee injuries, scoliosis, and rheumatoid arthritis. (*Id.* at 158-9, 186.) Plaintiff's application was denied on November 18, 2011, and plaintiff filed a written request for an administrative hearing on January 6, 2012. (*Id.* at 98-109, 110.) On October 12, 2012, plaintiff appeared with counsel and testified before the ALJ. (*Id.* at 54-75.)

On December 4, 2012 the ALJ issued a decision finding plaintiff not disabled under the Act. (*Id.* at 40-53.) The ALJ concluded that plaintiff's lumbar scoliosis and generalized osteoarthritis of the lumbosacral spine, bilateral hands, and bilateral knees were clinically demonstrated in the record, and caused more than a minimal limitation in the claimant's ability to perform basic work duties. (*Id*. at 45.) The ALJ also determined that there was no evidence to support plaintiff's claims of fibromyalgia, bilateral carpal tunnel syndrome, rheumatoid arthritis, post status ankle fracture, brain lesions, or visual disturbance. *Id*. The ALJ found that plaintiff had a history of these symptoms, but there was no medical evidence to support the claim that they were active. *Id*. The ALJ also concluded that those impairments found to be credible were not severe enough to meet the severity requirement for a listed impairment. (*Id*. at 46.) The ALJ found that Dr. Essman's statements were inconsistent with the record because they lacked objective signs, symptoms, and findings, Dr. Essman was not a specialist, and Dr. Essman's treatment regimen consisted solely of prescription pain medication. *Id*. Consequently, the ALJ found that plaintiff had the residual function capacity to perform the full range of light work. *Id*.

Plaintiff requested review of the ALJ's decision by the Appeals Council on January 17, 2013, and on September 26, 2014, submitted Dr. Stein's conclusions as new evidence. (*Id.* at 18-28, 37.) On July 16, 2014, the Appeals Council denied plaintiff's request, and determined that Dr. Stein's evaluation and conclusions did not pertain to the period of time between the alleged onset and the ALJ decision. (*Id.* at 1-7.) This rendered the ALJ's decision the final decision of the Commissioner. (*Id.*)

Plaintiff commenced this appeal on September 10, 2014. The Commissioner served the administrative record and filed an answer on January 9, 2015, and filed the pending motion for judgment on the pleadings on March 11, 2015. Plaintiff filed her cross-motion for a judgment on the pleadings on May 13, 2015. The Commissioner filed a reply on June 10, 2015. The Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

A district court may set aside a determination by an ALJ "only where it is based upon legal error or is not supported by substantial evidence." *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). The Supreme Court has defined "substantial evidence" in Social Security cases to mean "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted); *see Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). Furthermore,

6

"it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, "even if [the court] might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal citation and quotation marks omitted); *see also Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) ("Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner.").

## III. DISCUSSION

### A. Legal Standard

A claimant is entitled to disability benefits if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the SSA unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The Commissioner has promulgated regulations establishing a five-step procedure for evaluating disability claims. *See* 20 C.F.R §§ 404.1520, 416.920. The Second Circuit has summarized this procedure as follows:

The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work.

*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). The claimant bears the burden of proof with respect to the first four steps; the Commissioner bears the burden of proving the last step. *Brown*, 174 F.3d at 62.

The Commissioner "must consider" the following in determining a claimant's entitlement to benefits: "'(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.'" *Id.* (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam)).

B. Analysis

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and is the result of legal error. Specifically, plaintiff argues that the ALJ erred by failing to accord the proper weight to the opinion of plaintiff's treating physician. As set forth below, the Court agrees that the ALJ failed to provide sufficient reasoning for rejecting the opinion of Dr. Essman, plaintiff's treating physician, and remands on this basis.

1. The ALJ's Decision

In concluding that plaintiff was not disabled under the SSA, the ALJ adhered to the five-step sequential analysis for evaluating applications for disability benefits. (AR at 43-49.)

a. Substantial Gainful Activity

At step one, the ALJ must determine whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity is work activity that involves doing significant physical or mental activities," *id.* § 404.1572(a), and gainful work activity is work usually done for pay or profit, *id.* § 404.1572(b). Individuals who are employed are engaging in substantial gainful activity. In this case, the ALJ determined that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of March 1, 2011. (AR at 45.) Substantial evidence supports this finding and plaintiff does not challenge its correctness.

b. Severe Impairment

At step two, if the claimant is not employed, the ALJ determines whether the claimant has a "severe impairment" that limits his/her capacity to work. An impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c); *see also Perez,* 77 F.3d at 46. An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. § 404.1521.

In this case, the ALJ found that plaintiff had severe impairments of lumbar scoliosis and generalized osteoarthritis of the lumbosacral spine, bilateral hands and bilateral knees. (AR at 45.) The ALJ found that plaintiff's claims of suffering from fibromyalgia syndrome, bilateral carpal tunnel syndrome, rheumatoid arthritis, post status ankle fracture, brain lesions, and visual disturbance were not supported by the medical evidence. *Id.*

For the reasons set forth *infra*, the Court finds legal error in the ALJ's assessment of the plaintiff's impairments. Specifically, the ALJ did not give a sufficient basis for affording "little credit" to the statements of plaintiff's treating physician, Dr. Essman.

c. Listed Impairment

At step three, if the claimant has a severe impairment, the ALJ next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the ALJ will find the claimant disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(d).

In this case, the ALJ found that plaintiff's impairments did not meet any of the listed impairments in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at

8

46.) Substantial evidence supports this finding and plaintiff does not challenge its correctness.

### d. Residual Functional Capacity

If the severe impairments do not meet or equal a listed impairment, the ALJ assesses the claimant's residual functional capacity, in light of the relevant medical and other evidence in the claimant's record, in order to determine the claimant's ability to perform his or her past relevant work. 20 C.F.R. § 404.1520(e). The ALJ then compares the claimant's residual functional capacity to the physical and mental demands of his past relevant work. 20 C.F.R. § 404.1520(f). If the claimant has the ability to perform his or her past relevant work, he or she is not disabled. *Id.*

In this case, the ALJ found that plaintiff had the residual functional capacity to perform "the full range of light work" (AR. at 46), and that plaintiff "is capable of performing [her] past relevant work as a server/waitress" (*id.* at 49). The ALJ concluded that the plaintiff's residual functional capacity assessment "is consistent with the minimal x-ray evidence, the minimal objective signs, symptoms and findings demonstrated at the internal consultative examination, and the minimal objective findings of Dr. Essman's own notes." (*Id*. at 48-49.) The ALJ found that plaintiff's allegations and testimony were not "completely credible" and gave "little weight" to the opinion of plaintiff's treating physician, Dr. Essman, finding his opinion "inconsistent with the treatment evidence" and "entirely lacking in objective signs, symptoms, and findings." (*Id.* at 46-49.) The ALJ did not specify how much weight was given to the opinion of Dr. Manyam.

For the reasons set forth *infra*, the Court finds that there were legal errors in connection with the ALJ's assessment of plaintiff's residual functional capacity and ability to perform past relevant work. Specifically, the ALJ, in affording "little weight" to Dr. Essman's opinion, failed to evaluate the various factors that must be considered when determining how much weight to give to the treating physician's opinion. Because of this error, remand is necessary because the Court cannot determine whether substantial evidence supports the ALJ's decision. *See Branca v. Comm'r of Soc. Sec.*, No. 12-CV-643 (JFB), 2013 WL 5274310, at *11 (E.D.N.Y. Sept. 18, 2013).

### e. Other Work

At step five, if the claimant is unable to perform her past relevant work, the ALJ determines whether the claimant is capable of adjusting to performing any other work. 20 C.F.R. § 404.1520(g). To support a finding that an individual is not disabled, the Commissioner has the burden of demonstrating that other jobs exist in significant numbers in the national economy that claimant can perform. *Id.* § 404.1560(c); *see, e.g.*, *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

This case did not reach this step because the ALJ concluded the plaintiff could perform her past relevant work as a waitress. (AR at 49.)

## 2. Treating Physician Rule

Plaintiff argues, among other things, that the ALJ failed to accord the proper weight to her treating physician, Dr. Essman. The Court agrees that the ALJ failed to apply the proper standard for evaluating the medical opinion of Dr. Essman, and remands the case on this basis.

### a. Legal Standard

The Commissioner must give special evidentiary weight to the opinion of a treating physician. *See Clark*, 143 F.3d at 118. The "treating physician rule," as it is known, "mandates that the medical opinion of a

9

claimant's treating physician [be] given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *see, e.g.*, *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Clark*, 143 F.3d at 118. The rule, as set forth in the regulations, provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).

Although treating physicians may share their opinion concerning a patient's inability to work and the severity of disability, the ultimate decision of whether an individual is disabled is "reserved to the Commissioner." *Id.* § 404.1527(d)(1); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability.").

When the Commissioner decides that the opinion of a treating physician should not be given controlling weight, she must "give good reasons in [the] notice of determination or decision for the weight [she] gives [the claimant's] treating source's opinion." 20 C.F.R § 404.1527(c)(2); *see Perez v. Astrue*, No. 07-CV-958 (DLI), 2009 WL 2496585, at *8 (E.D.N.Y. Aug. 14, 2009) ("Even if [the treating physician's] opinions do not merit controlling weight, the ALJ must explain what weight she gave those opinions and must articulate good reasons for not crediting the opinions of a claimant's treating physician."); *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 627 (S.D.N.Y 2006) ("Even if the treating physician's opinion is contradicted by substantial evidence and is thus not controlling, it is still entitled to significant weight because the treating source is inherently more familiar with a claimant's medical condition than are other sources.") (internal citation and quotation marks omitted). Specifically, "[a]n ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). "Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell*, 177 F.3d at 133.

b. Analysis

The Court finds that the ALJ failed to apply the proper standard for evaluating the opinion of Dr. Essman, plaintiff's treating physician. Specifically, the ALJ did not provide sufficient reasons for rejecting Dr. Essman's opinion, which the ALJ stated it afforded "little weight." (AR. at 48.) The ALJ found Dr. Essman's opinion to be inconsistent with the treatment evidence and "lacking in objective signs, symptoms, and findings," and discounted Dr. Essman's opinion because he was the plaintiff's primary care provider, rather than a specialist. *Id.*

The Court concludes that the ALJ did not set forth in sufficient detail the reasons for affording "little weight" to the treating physician's opinion. The Second Circuit has repeatedly noted that an ALJ must "set forth her reasons for the weight she assigns to the treating physician's opinion." *Shaw*, 221 F.3d at 134; see also *Taylor v. Barnhart*, 117 F. App'x 139, 140-41 (2d Cir. 2004) (remanding case because ALJ "did not give sufficient reasons explaining how, and on the basis of what factors, [the treating physician's] opinion was weighed," and stating that "we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion" (internal citation and quotation marks omitted)); *Torres*, 2014 WL 69869, at *13 (finding error where ALJ assigned only "some weight" to opinion of treating physician); *Black v. Barnhart*, No. 01–CV–7825(FB), 2002 WL 1934052, at *4 (E.D.N.Y. Aug. 22, 2002) ("[T]he treating physician rule required the ALJ . . . to clearly articulate her reasons for assigning weights.").

In particular, the ALJ did not address certain of the *Halloran* factors required when an ALJ affords a treating source less than controlling weight, despite the Second Circuit's repeated admonitions to do so. For example, the ALJ's opinion does not address "the frequency of examination and the length, nature, and extent of the treatment relationship." *Clark,* 143 F.3d at 118. Dr. Essman examined, tested, and treated plaintiff approximately every six weeks for several years. (AR at 64.) In other words, he was "likely to be the medical professional[ ] most able to provide a detailed, longitudinal picture of . . . medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from . . . reports of individual examinations." *Taylor*, 117 F. App'x at 140 (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. Essman treated plaintiff regularly, and his opinion cannot be discarded lightly. He specifically stated that his opinions were based on clinical and diagnostic evidence, including plaintiff's medical history, blood work showing plaintiff had a positive rheumatoid factor, a thyroid ultrasound, and an MRI of plaintiff's brain. (AR. at 281-86; 295-302.) The ALJ dismissed Dr. Essman's opinion as worthy of "little weight" because he is the plaintiff's "primary care provider" and not "a rheumatologist nor other specialist." (AR at 48.) Instead, the ALJ appears to have credited Dr. Manyam's opinion, even though Dr. Manyam is also an internist and not a specialist, Dr. Manyam evaluated plaintiff on only one occasion, and it is unclear whether Dr. Manyam reviewed plaintiff's medical records or the results of plaintiff's lab tests.[2] (*Id.* at 48.) To be sure, the opinion of a non-treating

---

[2] The ALJ also appears to have failed to take into consideration the fact that plaintiff provided testimony that she received regular treatment from Dr. Essman, rather than a specialist, because she could not afford to pay out of pocket to see a specialist. Additionally, the ALJ does not state how much weight, if any, it gave to the laboratory and X-ray results from plaintiff's visits to Dr. Tiger, a rheumatologist, in 2005 and 2010.

physician can be overridden, but only where the evidentiary record supports that conclusion. *Netter v. Astrue*, 272 F. App'x 54, 55-56 (2d Cir. 2008) (internal quotation marks and citations omitted). In other words, the ALJ must be able to point to aspects of the record that support Dr. Manyam's contentions, beyond the contentions themselves. The ALJ discounted Dr. Essman's findings, but it is not clear which clinical findings, or why they were determined to be inferior to the findings recorded by Dr. Manyam. *Branca,* 2013 WL 5274310, at *13; *Correale–Englehart v. Astrue,* 687 F.Supp.2d 396, 431 (S.D.N.Y. 2010) (remanding to the Commissioner because "the ALJ never followed the analytical path mandated by regulation, which requires that he discuss the length of treating relationship, the expertise of the treating doctors, the consistency of their findings and the extent to which the record offers support for some or all of those findings").

In sum, having carefully reviewed the record, the Court concludes that the ALJ failed to adequately explain the reasons for affording "little weight" to the opinion of the treating physician in this case. Given the failure to properly apply the treating physician rule, a remand is appropriate for such a determination.[3]

### III. Conclusion

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's cross-motion for judgment on the pleadings is denied, but plaintiff's motion to remand is granted. The case is remanded to the ALJ for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 10, 2016
Central Islip, NY

\*\*\*

---

[3] Plaintiff also argues that (1) the ALJ failed to properly evaluate Ms. Noutsis' credibility; and (2) the Appeals Council failed to consider new and material evidence (namely, the new evidence from examining rheumatologist, Dr. Stein). With respect to the new evidence, the Second Circuit has made clear that "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). The Second Circuit, citing to C.F.R. § 404.970(b) and § 416.1470(b), further explained that "[t]he only limitations stated in these rules are that the evidence must be new and material and that it must relate to the period on or before the ALJ's decision." *Id*. Although the Council did not consider that evidence because it did not believe it related to the period in question, the Court disagrees. Dr. Stein specifically concluded that the symptoms and limitations he described were present since 2010, (AR at 25) and, thus, the evidence clearly related to the period at issue, before the ALJ's decision. If the evidence is new and material to the period in question, the date of the examination (or the report) does not preclude consideration by the Appeals Council. *See, e.g.*, *Farina v. Barnhart*, No. 04 CV 1299 JG, 2005 WL 91308, at *5 (E.D.N.Y. Jan. 18, 2005) ("The requirement to review new evidence, however, hinges on whether the report relates to the period on or before the ALJ's decision, and not to the date of the report itself."). In short, because it appears that Dr. Stein is opining that the symptoms and limitations began in 2010, on remand, the ALJ should also consider this evidence. Similarly, the ALJ, after re-applying the treating physician rule and considering this new evidence, should also re-assess the credibility of plaintiff's testimony.

Plaintiff is represented by the Law Office of Harry J. Binder and Charles E. Binder, P.C. The Commissioner is represented by Robert S. Capers, United States Attorney, Eastern District of New York, by Seth Eichenholtz, 271 Cadman Plaza East, Brooklyn, NY 11201.